UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Michael Malone, | ) | Civil Action No.: 4:22-cv-04189-TER |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | ORDER |
| Kilolo Kijakazi, | ) | |
| Acting Commissioner of Social Security, | ) | |
| Defendant. | ) | |
| _____ | ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended,

42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of

Social Security, denying Plaintiff's claim for disability insurance benefits(DIB) and supplemental

security income(SSI). The only issues before the Court are whether the findings of fact are supported

by substantial evidence and whether proper legal standards have been applied. This action is

proceeding before the undersigned pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

## I. RELEVANT BACKGROUND

### A.    Procedural History

Plaintiff filed an application in February 2017 for DIB and SSI, alleging an onset date of

January 31, 2017.  His claims were denied initially and upon reconsideration.  Thereafter, Plaintiff

filed a request for a hearing.  A hearing was held in December 2018, at which time Plaintiff and a

vocational expert (VE) testified.  The Administrative Law Judge (ALJ) issued an unfavorable

decision on March 20, 2019, finding that Plaintiff was not disabled within the meaning of the Act.

(Tr. 112).  Plaintiff filed a request for review of the ALJ's decision, which the Appeals Council

granted in February 2020, specifically as to substantial gainful activity("SGA") details, and the ALJ

was instructed to further consider "SGA during the entire period at issue." (Tr. 119-120). On January

6, 2022, another hearing was held. (Tr. 32). On January 19, 2022, the ALJ issued an unfavorable

decision, finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 23). Plaintiff

filed a request for review of the ALJ's decision, which the Appeals Council denied in September

2022, making the ALJ's 2022 decision the Commissioner's final decision. (Tr. 1-3). Plaintiff filed

an action in this Court in November 2022. (ECF No. 1).

**B.     Plaintiff's Background**

Plaintiff was born in October 1958, and was fifty-eight years old at the alleged onset date.

(Tr. 79). Plaintiff had past relevant work experience as a resolutions specialist/inventory audit clerk

and as a firefighter. (Tr. 22, 17). Plaintiff alleges disability originally due to ulcerative colitis, and

later anxiety, headaches, psoriasis, and fatigue. (Tr. 79, 104). Pertinent medical records will be

discussed under the relevant issue headings.

**C.     The ALJ's Decision**

In the decision of January 19, 2022, the ALJ made the following findings of fact and

conclusions of law (Tr. 23):

1.     The claimant meets the insured status requirements of the Social Security Act
       through December 31, 2021.

2.     The claimant engaged in substantial gainful activity during the following
       periods: January 31, 2017 through June 30, 2018 (20 CFR 404.1520(b),
       404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3.     However, there has been a continuous 12-month period(s) during which the
       claimant did not engage in substantial gainful activity. The remaining
       findings address the period(s) the claimant did not engage in substantial
       gainful activity.

4.     The claimant has the following severe impairments: ulcerative colitis/irritable
       bowel syndrome, degenerative disc disease, osteoarthritis, and obesity (20
       CFR 404.1520(c) and 416.920(c)).

2

5.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

6.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that he could occasionally bend, balance, crouch, crawl, kneel, stoop, and climb; he must avoid heights and hazards; he must have ready access to a restroom (not more than approximately 50 yards from the workstation); and he may miss 1 day of work per month.

7.      The claimant is capable of performing past relevant work as a resolutions specialist/inventory audit clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

8.      The claimant has not been under a disability, as defined in the Social Security Act, from January 31, 2017, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

## II. DISCUSSION

Plaintiff argues the ALJ erred in evaluating Dr. Wanamaker's treating opinion. Plaintiff argues the ALJ erred in determining the RFC because of time off task due to restroom breaks. The Commissioner argues that the ALJ's decision is supported by substantial evidence.

Plaintiff argues the ALJ's finding of SGA through June 30, 2018 is not based on substantial evidence and is inaccurate based on controlling law. This argument is twofold; first, Plaintiff argues although the actual earnings amount exceeded the threshold, the work was subsidized, and therefore not SGA; second, the time period is inaccurate because Plaintiff's earnings in the second quarter of 2018 were below the threshold amount to be SGA. (ECF No. 11 at 10-11). Defendant only addresses SGA in a footnote at the end of its brief stating the argument is moot. (ECF No. 12 at 10).

## A.    LEGAL FRAMEWORK

3

### 1.    The Commissioner's Determination–of–Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing PRW;[2] and (5)

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

whether the impairment prevents him from doing SGA.  *See* 20 C.F.R. § 404.1520.  These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis.  If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work.  See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982).  The claimant bears the burden of establishing his inability to work within the meaning of the Act.  42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy.  To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW.  *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002).  If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work.  *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

## 2.     The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party."  42 U.S.C. § 405(g).  The scope of

that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence as a threshold is "not high;" "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

**B.**    **ANALYSIS**

**RFC**

Plaintiff argues the ALJ erred in determining the RFC because of time off task due to restroom breaks.

6

An adjudicator is solely responsible for assessing a claimant's RFC. 20 C.F.R. § 416.946(c). In making that assessment, he must consider the functional limitations resulting from the claimant's medically determinable impairments. Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *2. This ruling provides that: "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8, *7. "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* Additionally, " 'a necessary predicate to engaging in a substantial evidence review is a record of the basis for the ALJ's ruling,' including 'a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.' " *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (*quoting Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)).

Concerns over time spent in the bathroom affecting the RFC considerations of time off task and CPP have been addressed by the Fourth Circuit Court of Appeals. "Obviously, the need to visit the bathroom many times throughout the day impacts one's ability to work. And yet, the ALJ did not analyze Appellant's need for regular bathroom breaks."*Dowling v. Comm'r*, 986 F.3d 377, 389 (4th Cir. 2021)("On remand, the ALJ should evaluate the frequency at which Appellant needed to use the bathroom and analyze how that restriction impacted her ability to work.").

As to restroom use, the ALJ here found an RFC of "must have ready access to a restroom(not more than approximately 50 yards from the workstation)." (Tr. 19). The only time restroom access is mentioned is in the determination; it is not mentioned in the RFC explanation/narrative. With no correlation to the restroom access RFC, the ALJ generally noted Plaintiff testified to needing to

frequently go to the bathroom with urgency several times a day and flare-ups that sometimes last for several weeks. (Tr. 20). The ALJ also cited notes where Plaintiff's bowel movements were more regular with no urgency and other notes where Plaintiff had intermittent loose stool and urgency. (Tr. 20-21). The ALJ's general conclusion only states "the undersigned accorded the claimant the benefit of the doubt and further reduced the residual functional capacity to include his limitations as described above." (Tr. 22). Based on the evidence cited and the RFC given, it is unclear what evidence was accorded more importance in formulating the restroom access element of the RFC. The ALJ provided no explanation. The ALJ acknowledged by the RFC determination itself that Plaintiff had restroom access needs related to at least urgency linked to proximity. Logic suggests if "ready access" is required, frequency is a consideration as well. In the particular facts of the instant case, the ALJ provided no explanation for the access limitation the ALJ found nor any explanation as to the effect on the RFC related to the frequency of actually using that "ready access"; the decision precludes meaningful judicial review. The ALJ has not provided the court with a meaningful opportunity to review the RFC and the RFC explanation/narrative. Based on the foregoing record and applicable published case law, the court can not find that the ALJ's decision was supported by substantial evidence and remand is appropriate where inadequacies in the ALJ's analysis frustrate meaningful review. *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015).

**Opinions: Dr. Wanamaker**

Plaintiff argues the ALJ erred in evaluating Dr. Wanamaker's treating opinion.

The Social Security Administration's regulations provide that "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(c)(eff. for claims filed before 3/27/17), § 416.927(c)(eff. for claims filed before 3/27/17). Generally, more weight is given

to the opinions of examining physicians than nonexamining physicians. More weight is given to the opinions of treating physicians since they are more likely to be able to provide a detailed, longitudinal picture of a claimant's medical impairment. *See* 20 C.F.R. § 404.1527(c), § 416.927(c). The medical opinion of a treating physician is entitled to controlling weight, i.e., it must be adopted by the ALJ, if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(c)(2), § 416.927(c)(2); SSR 96-2p(rescission eff. for claims filed on or after 3/27/17); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 585,590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro*, 270 F.3d at 178 (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)).

In determining what weight to give the opinions of medical sources, the ALJ applies the factors in 20 C.F.R. § 404.1527(c)(1)-(6), § 416.927(c)(1)-(6), which are: whether the source examined the claimant; whether the source has a treatment relationship with the claimant and, if so, the length of the relationship and the frequency of examination; the nature and extent of the treatment relationship; the supportability and consistency of the source's opinion with respect to all of the evidence of record; whether the source is a specialist; and, other relevant factors. *See* SSR 96-2p; *Hines v. Barnhart*, 453 Fd 559,563 (4th Cir. 2006). The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See Craig*, 76 F.3d at 595.

Even when a treating opinion is not entitled to controlling weight, "it does not follow that the ALJ ha[s] free reign to attach whatever weight to that opinion that he deem[s] fit." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 385 (4th Cir. 2021). It must be "apparent from the ALJ's decision that he meaningfully considered each of the factors before deciding how much weight to give the opinion." *Id.* The Fourth Circuit Court of Appeals found it was error necessitating remand where only the factors of supportability and consistency were discussed by the ALJ and other factors of length, frequency, nature, and extent of treating relationship were ignored. *Id.* "20 C.F.R. § 404.1527(c) requires ALJs to consider *all* of the enumerated factors in deciding what weight to give a medical opinion." *Arakas v. Comm'r of Soc. Sec. Admin.*, 983 F.3d 83, 107 n.16 (emphasis in original).

As to Dr. Wanamaker, the ALJ found:

> As for the opinion evidence, Dr. Wanamaker submitted an undated letter in which he outlined symptoms including intermittent diarrhea, fecal urgency, and abdominal pain, with incapacitating flare-ups and these episodes are unpredictable. (Exhibit 10F). I have given light weight to Dr. Wanamaker's opinions as they **contain only a general list of symptoms and do not identify specific symptoms attributable to the claimant**. Additionally, while Dr. Wanamaker's letter is undated, his letter was admitted into the record in 2017 before the claimant's symptoms improved, as described above.

(Tr. 22)(emphasis added). The ALJ here did not consider all of the 20 C.F.R. § 404.1527(c)(1)-(6) factors as required by *Arakas* and *Dowling* in analyzing Dr. Wanamaker's opinion. As to the ALJ's statement that Dr. Wanamaker's opinions "contain only" a general list of symptoms and not specific symptoms attributable to claimant, a review of the opinion shows bloody diarrhea, fecal urgency, and unpredictable flares were specifically attributed to Plaintiff. (Tr. 838).

Dr. Wanamaker's opinion was:

> I originally met Mr. Malone on May 15, 2017 after he moved to the area. He was

formerly followed by Dr. Richard Moses in Philadelphia. He was diagnosed with ulcerative colitis in 2001. He's had a complicated course in the past including multiple hospitalizations. He has had to deal with bloody diarrhea with fecal urgency. His current medical regimen has included the use of Remicade. This is an IV infusion which must be performed every 8 weeks with an indefinite time frame. He has had improvement with this medication.

The patient also has a diagnosis of irritable bowel syndrome. This is also characterized by diarrhea with urgency and abdominal pain. During episodes of this flare, work becomes very difficult as the bathroom needs to be very close by. Medical therapy with antidiarrheals and antispasmodics is the mainstay for treatment. This does require frequent office visits at least every 3 months. Unfortunately, there is no predictability to flare episodes. These can be incapacitating for a few days at a time.

Currently the patient seems to have static disease. He is on appropriate medical therapy. He continues to be compliant with his medical therapy and has followed up appropriately and followed recommendations accordingly.

Please see enclosed documentation regarding my evaluation and findings in regards to Mr. Malone. Of note, previous hospitalizations and records are available through his physician in Philadelphia. I did enclose most recent colonoscopy and pathology reports that we have available.

(Tr. 838). Dr. Wanamaker attached the referenced records.

The relevant time period before the ALJ began in January 2017. Dr. Wanamaker's notes through December 2017 are relevant, regardless of any later improvement. The ALJ did not consider that Dr. Wanamaker is a GI specialist, one of the required 20 C.F.R. § 404.1527(c)(1)-(6) factors. Supportability and consistency were not discussed specifically either; the ALJ found generally that Plaintiff improved after 2017. Dr. Wanamaker's visit records in December 2017 note intermittent loose stools generally occurring most days with occasional days of cramping and urgency. (Tr. 839). "He notices a significant amount of mucus in his stool at times." (Tr. 839). Discussion was "I believe his symptoms are more consistent with irritable bowel syndrome at this point [and] his underlying inflammatory bowel disease was seems to be in good remission." (Tr. 840)(errors in original).

Plaintiff continued to see Dr. Wanamaker into 2018 and 2019.  In July 2018, Plaintiff reported occasionally loose bowel movement but no urgency. (Tr. 854). Discussion was "current symptoms are most consistent with intermittent irritable bowel syndrome." (Tr. 856).

While Plaintiff may have improved some after 2017, the ALJ did not support this analysis as to Dr. Wanamaker's opinions with resolution of conflicting evidence. In March 2018, Plaintiff was seen in the emergency room with abdominal pain. (Tr. 1119). Imaging showed "findings concerning for mesenteric adenitis" and "periumbilical hernia." (Tr. 1123). Records state Plaintiff had inflammation of lymph nodes in the membrane that attaches intestines to the inside wall of the abdomen. (Tr. 1140).  On October 8, 2018, Plaintiff was seen in the emergency room for left flank pain. (Tr. 1175, 1250).  Imaging again was consistent with mesenteric adenitis/panniculitis, unchanged. (Tr. 1279).

In March 2019, Plaintiff was seen by Dr. Wanamaker showing stable disease. (Tr. 1400-1401). In October 2019, Plaintiff was seen at Hilton Head GI by Dr. Gwozdz. (Tr. 1542). Plaintiff reported diarrhea and constipation. Plaintiff was seen again in December 2019 and reported bleeding with almost every bowel movement for last two weeks. (Tr. 1543). By December 2019, Plaintiff requested to see a VA GI doctor. (Tr. 1432).

A February 2021 colonoscopy showed inflammatory polyps due to inflammatory bowel disease and ulcerative colitis. (Tr. 1548). In July and October 2021, Plaintiff was seen for frequency and urgency of urination. (Tr. 1586, 1591).  Imaging in 2021 showed decompressed stomach and chronic panniculitis. (Tr. 1596).

On remand, the ALJ should meaningfully consider each of the 20 C.F.R. § 404.1527(c)(1)-(6) factors in alignment with *Dowling* and *Arakas* and to the extent improvement in more recent years

is relied on by the ALJ in analyzing Dr. Wanamaker's opinions, the ALJ should resolve conflicting evidence present in the record.

The analysis here is similar to that in *Dowling*:

> ...there is no indication that the ALJ actually undertook the required analysis of Dr. Gross's opinion. Indeed, the ALJ never so much as acknowledged the existence of the Section 404.1527(c) factors. Moreover, the ALJ was completely silent as to the remaining four Section 404.1527(c) factors; for instance, the ALJ considered neither the "[l]ength of the treatment relationship and the frequency of examination," nor the "[n]ature and extent of the treatment relationship." 20 C.F.R. § 404.1527(c)(2)(i)–(ii). The ALJ's failure to consider each of the Section 404.1527(c) factors was error. While an ALJ is not required to set forth a detailed factor-by-factor analysis in order to discount a medical opinion from a treating physician, it must nonetheless be apparent from the ALJ's decision that he meaningfully considered each of the factors before deciding how much weight to give the opinion.

*Dowling v. Comm'r*, 986 F.3d 377, 385 (4th Cir. 2021). The ALJ here did not meaningfully consider each of the 20 C.F.R. § 404.1527(c) factors. The ALJ does not facilitate judicial review where there was no meaningful discussion of the factors. *Id.* at 386.

## SGA

Plaintiff argues the ALJ's finding of SGA through June 30, 2018 is not based on substantial evidence and is inaccurate based on controlling law. This argument is twofold; first, Plaintiff argues although his earnings amount exceeded the threshold, the work was subsidized, and therefore not SGA; second, the time period is inaccurate because Plaintiff's earnings in the second quarter of 2018 were below the threshold amount to be SGA. (ECF No. 11 at 10-11). Defendant only addresses SGA in a footnote at the end of its brief stating the argument is moot. (ECF No. 12 at 10).

This issue does not appear to be moot because of an additional finding made by the ALJ here. The ALJ found the ALJ's remaining findings, like as to the RFC and opinions, only addressed the periods Plaintiff did not engage in SGA, meaning the ALJ's findings only addressed the time period

after June 2018. (Tr. 18). This is an approximately 18 month significant period of time that the ALJ's findings did not cover. (Tr. 17-18).

Subsidized argument

Plaintiff worked some from his 2017 alleged onset until retirement in August 2021. (ECF No. 11 at 7). Plaintiff argues that the work activity performed from 2017 through the second quarter of 2018 did not constitute SGA because he only worked five hours every two weeks. Plaintiff argues the special conditions Plaintiff worked under rebut the presumption of SGA. Pursuant to 20 C.F.R. § 404.1573, an ALJ is required to consider whether work was performed under "special conditions." Relevant examples of "special conditions" are "allowed to work irregular hours or take frequent rest periods" or "permitted to work at a lower standard of productivity or efficiency than other employees." 20 C.F.R. § 404.1573. Plaintiff argues the time sheets and employer statements support Plaintiff's testimony of five hours of work every two weeks and the $166 per month above the SGA threshold should not be used to deny findings for that time period. (ECF No. 11 at 10).

Plaintiff here has substantiated some of his allegations with some[3] documentation from his employer, enough that the ALJ's current findings, with no consideration of the regulatory "special consideration" factors, is not supported by substantial evidence. *See Langenfelder v. Berryhill*, 2018 WL 4565663, at *2 (D. Md. Sept. 24, 2018)(remanding where the ALJ did not examine whether claimant worked under special conditions and objective evidence could support such a conclusion); *Miller v. Astrue*, No. 0:10-cv-1548-TMC-PJG, 2011 WL 5526196, at *4 (D.S.C. Oct. 24, 2011),

_____

[3] Plaintiff testified in 2018 and 2022 that he worked five hours every two weeks. (Tr. 45, 59). Plaintiff testified he received paid sick and vacation time. (Tr. 60). There is a 2020 email that states Plaintiff works at least five hours every two weeks. (Tr. 491). The time sheets are from December 2018, 2019, and 2020. The December 2018 one shows Plaintiff worked 5 hours in the pay period, received paid leave for 20 hours, and unpaid leave for 55 hours. (Tr. 357).

*report and recommendation adopted*, 2011 WL 5526027 (D.S.C. Nov. 14, 2011)(remanding where the ALJ did not consider special conditions and there were letters from Plaintiff's employers that could support special conditions). The ALJ should perform an analysis of the appropriate regulatory factors regarding SGA and special conditions upon remand.

Inaccurate time period as to second quarter of 2018

SSA's threshold amount for SGA for 2018 per month was $1,180.[4] Plaintiff's second quarter earnings in 2018 were $2,585. (Tr. 338). In the ALJ's first vacated decision there was an erroneous number of $4,301, which was corrected with the earnings reports for the second hearing. (Tr. 111, 338). It appears instead of reviewing the new information, the ALJ used the erroneous information from the first vacated decision. The amount $2,585 divided by three months produces an average of $861 per month, which is well below the SGA threshold in 2018 of $1,180 per month. The ALJ's findings as to SGA are unsupported by substantial evidence and the ALJ should review the record and correct these findings on remand.

Upon remand, the ALJ should take into consideration all of Plaintiff's briefed allegations of error and support findings with citation to substantial evidence and provide logical explanation from the evidence to the ultimate conclusions. *See Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015).

## CONCLUSION

In conclusion, it may well be that substantial evidence exists to support the Commissioner's decision in the instant case. The court cannot, however, conduct a proper review based on the record presented. Accordingly, pursuant to the power of the Court to enter a judgment affirming,

---

[4] https://www.ssa.gov/oact/cola/sga.html#:~:text=Amounts%20for%202023,amount%20 for%202023%20is%20%241470 (last visited August 30, 2023).

modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), the Commissioner's decision is REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with this opinion.

                                                    s/Thomas E. Rogers, III
September 21, 2023                                   Thomas E. Rogers, III
Florence, South Carolina                            United States Magistrate Judge